**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **WILLIAM C. SHEHAN, JR.,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 1:20-cv-00500** |
| | : | |
| **v.** | : | **Chief Judge Algenon L. Marbley** |
| | : | |
| **U.S. DEPT. OF JUSTICE, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

<u>**OPINION & ORDER**</u>

This matter is before the Court on motions to dismiss pursuant to Rule 12 of the Federal

Rules of Civil Procedure filed by Defendants PayPal, Inc. ("PayPal"), PNC Bank, N.A. ("PNC"),

and Stock Yards Bank & Trust ("Stock Yards").[1] For the reasons set forth below, PNC and Stock

Yards' respective motions to dismiss the complaint for lack of subject-matter jurisdiction are

**GRANTED**. Plaintiff's complaint is **DISMISSED WITHOUT PREJUDICE**. All other

motions are **DENIED AS MOOT**.

## I.  BACKGROUND

Plaintiff William C. Shehan, Jr. ("Mr. Shehan") filed a fee-paid, pro se complaint

alleging *inter alia* that Defendants PayPal, PNC, and Stock Yards denied his application for a

loan under the Paycheck Protection Program ("PPP") based on information about a tax case

previously brought against Mr. Shehan by the United States Department of Justice ("DOJ"). Mr.

Shehan alleges that basing the denial of his application on that information gave rise to state law

claims for breach of contract, bad faith, gross negligence, the tort of outrage, and punitive

---

[1] The complaint named "Paypal," "PNC Bank," and "Stock Yard Bank" as defendants. (ECF No. 1). It appears from
the relevant Rule 12 motions that "PayPal, Inc.," "PNC Bank, N.A.," and "Stock Yards Bank & Trust" are proper.
(ECF Nos. 25, 20, 32).

- 1 -

damages, as well as, possibly, a claim of violation of the PPP as set forth in § 1102 of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-36, 134 Stat. 281 (2020). In response, PayPal, PNC, and Stock Yards each filed motions to dismiss the complaint pursuant to Rule 12 of the Federal Rules of Civil Procedure. An additional motion to dismiss was filed by Truist Bank, which was not named as a defendant, but against which Mr. Shehan apparently made extensive allegations in the complaint.[2] Mr. Shehan requested a lengthy extension of time to file a response but received one only until October 27, 2020. Ultimately, he filed no response.

### A. Plaintiff's Complaint

Mr. Shehan filed this civil action on June 29, 2020, seeking fifty million dollars in damages and other relief. (ECF No. 1). Mr. Shehan is a life-long resident of Kentucky. (ECF No. 1 at 6). The complaint includes allegations referring to Mr. Shehan's business interests, *see, e.g.*, (ECF No. 1 at 9, ¶ 3), but it is possible Mr. Shehan brings this suit in his personal capacity. The case caption names "William C. Shehan, Jr., et al." as the plaintiff, (ECF No. 1 at 1), and the complaint focuses on actions taken and harms suffered by Mr. Shehan himself.[3]

The named Defendants include a multitude of individuals and entities, public and private. Based on a reading of the complaint, however, Mr. Shehan makes claims against only PayPal, PNC, and Stock Yards. The complaint states: "This action is focused exclusively on damages resulting from the Plaintiff being denied benefits made available through the Paycheck Protection Program." (ECF No. 1 at 24, ¶ 49). Mr. Shehan contacted only PayPal, PNC, and

---

[2] The complaint's allegations are variously directed at "Truist Financial" or "Truist Financial Corporation." *See, e.g.*, (ECF No. 1 at 6-7).

[3] *See, e.g.*, (ECF No. 1 at 9, ¶ 1 ("Plaintiff, William C. Shehan, Jr, . . . brings this action before the Court seeking relief and damages . . . .")); (*id.* at 10, ¶ 6 ("Shehan contacted three banks to submit applications.")); (*id.* at 11, ¶ 10 ("However, because of the bank's gross negligence, breach of the PPP, and bad faith, Shehan suffered damages.")).

Stock Yards to submit applications for funds under the PPP. (ECF No. 1 at 10, ¶ 6). He alleges that all three declined to process his applications based on the same "fraudulent information" about a tax case in which Mr. Shehan was involved. (ECF No. 1 at 10-11, ¶¶ 7-9); *see also* (*id.* at 24-25, ¶¶ 50-52). The complaint states, however, that "damages and issues connected to the tax case are not the subject of this action." (ECF No. 1 at 6).[4] Further supporting the conclusion that claims are made against only three of the Defendants are the five "claims for relief" explicitly set out near the end of the complaint and directed only at PayPal, PNC, and Stock Yards. (ECF No. 1 at 27-1). Also, the complaint includes a page entitled "Parties in this Action" that lists only Mr. Shehan, PayPal, PNC, Stock Yards, and the "United States Department of Justice." (ECF No. 1 at 6).[5] Moreover, on a page entitled "Parties Not Part of this Action," the complaint states: "This action is focused on damages caused by Stock Yard Bank, Paypal and PNC Bank . . . ." (ECF No. 1 at 7). Despite the complaint's inclusion of extensive allegations about other individuals and entities, *see, e.g.*, (ECF No. 1 at 12-23, ¶¶ 12-48), the Court is able to discern no claims asserted against any party or non-party aside from PayPal, PNC, and Stock Yards.

The complaint makes clear that Mr. Shehan has brought state law claims for breach of contract, bad faith, gross negligence, the tort of outrage, and punitive damages against PayPal, PNC, and Stock Yards. (ECF No. 1 at 24-26, at ¶¶ 50-54); *see also* (*id.* at 27-31); (*id.* at 11, ¶ 10). Less clear is whether the complaint claims a direct violation of the PPP. On the one hand, the complaint expressly sets out only the state law claims stated above without mention of any

---

[4] *See also* (ECF No. 1 at 7 ("However, currently, the tax case, related claims and damages are not part of, or the subject of this action.")); (*id.* at 11, ¶ 11 ("The false and fraudulent information placed into the public record by the Department of Justice and Truist Financial Corporation, the files which Stock Yard Bank, Paypal and PNC Bank relied on in reaching a determination to decline's Shehan's PPP application, are provided in the following pages for the Court's evaluation and consideration[.]")); (*id.* at 24, ¶ 49 ("However, the events and details described above are not the subject of this action.")).

[5] Despite including the DOJ in this list, Mr. Shehan expressly rejects the possibility of asserting a claim against it. (ECF No. 1 at 6 ("However, damages and issues connected to the tax case are not the subject of this action.")); *see also* sources cited *supra* note 4.

violation of the PPP. (ECF No. 1 at 27-31). On the other hand, the complaint sometimes includes language suggesting that a PPP violation is alleged. For example, the complaint alleges that "because of the bank's gross negligence, *breach of the PPP*, and bad faith, Shehan suffered damages." (ECF No. 1 at 11, ¶ 10 (italics added)). Similarly, it alleges that the decision of PayPal, PNC, and Stock Yards "to decline Shehan's application . . . is a *violation and breach of the Paycheck Protection Program's purpose* during a pandemic which constitutes gross disregard in caring for others, is outrageous on its face and proven more so against the backdrop of events described herein." (ECF No. 1 at 24, ¶ 50-53 (italics added)). Such allegations may indicate an attempt to bring a claim for violation of the PPP.

Although the complaint is quite convoluted, the core facts alleged in support of Mr. Shehan's claims appear to be as follows. Mr. Shehan alleges that PayPal, PNC, and Stock Yards each declined his application for a loan under the PPP. (ECF No. 1 at 10-11, ¶¶ 7-9). They allegedly based their decisions on "fraudulent information placed into the public record by the United States Department of Justice and Truist Financial Corporation." (*Id.*). The "fraudulent information" referred to is a "tax case" brought against Mr. Shehan by the Department of Justice that allegedly "was conceived, designed and fabricated by Truist Financial as a weapon to control Shehan's testimony, to conceal bank fraud, to engage in federal racketeering and obstruction of justice." (ECF No. 1 at 6). According to the complaint, PayPal, PNC, and Stock Yards each "failed to fully investigate" the fraudulent nature of the information upon which they based their decisions to deny Mr. Shehan's applications. (ECF No. 1 at 24-25, ¶¶ 50-52). It is alleged that denying Mr. Shehan's PPP application on the basis of such fraudulent information gave rise to Mr. Shehan's claims. (*Id.*); (*id.* at 24, ¶ 49).

Thus, the complaint asserts state law claims, and a possible claim for violation of the PPP, against only PayPal, PNC, and Stock Yards for their alleged denial of his PPP applications on the basis of a "fraudulent" tax case brought against Mr. Shehan by the DOJ.

### B.  Defendants' Rule 12 Motions

Mr. Shehan's complaint was met by several pre-answer motions to dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure.

PNC filed a motion to dismiss the complaint and a memorandum in support thereof on July 27, 2020. (ECF Nos. 19, 20). PNC seeks dismissal of the complaint in its entirety with prejudice for lack of subject-matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). With respect to the former defense, PNC argues first that the complaint is insufficient to invoke this Court's subject-matter jurisdiction because the allegations are "totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion" under the precedent of *Apple v. Glenn*, 183 F.3d 477 (6th Cir. 1999), *cert. denied*, 528 U.S. 1198 (2000). (ECF No. 20 at 7-8). Second, PNC argues that the complaint fails to invoke federal question jurisdiction because the CARES Act does not create a private right of action, and because the complaint asserts only state law claims that do not implicate a substantial federal issue while complete diversity is lacking. (*Id.* at 8-10). With respect to its motion for failure to state a claim under Rule 12(b)(6), PNC argues first that Plaintiff's claims depend on an alleged violation of the CARES Act, which lacks a private right of action, and that Mr. Shehan cannot circumvent the lack of a private right of action by characterizing his claims as arising under state law. (*Id.* at 10-12). Second, PNC argues that Mr. Shehan failed to plead factual content that would allow the Court to infer any liability on the part of PNC. (*Id.* at 12-14).

- 5 -

Stock Yards filed a motion to dismiss and memorandum in support thereof. (ECF No. 32). Stock Yards similarly seeks dismissal of the complaint with prejudice for lack of subject-matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6). Its arguments track closely those made by PNC: that the complaint is insufficient to invoke this Court's subject-matter jurisdiction under *Apple v. Glenn*; that there is no federal question jurisdiction because Mr. Shehan asserts only state law claims not implicating a substantial federal issue, and that complete diversity is lacking; that the CARES Act contains no private right of action so the court lacks subject-matter jurisdiction and Mr. Shehan has failed to state a claim upon which relief can be granted; and, finally, that Mr. Shehan failed to plead factual content that would allow the Court to infer any liability on the part of Stock Yards. (*Id.* at 6-11).

PayPal filed a motion to dismiss the complaint and a memorandum in support thereof. (ECF Nos. 24, 25). PayPal seeks dismissal of Mr. Shehan's claims against PayPal in their entirety with prejudice for failure to state a claim under Rule 12(b)(6) on the grounds that the CARES Act does not create a private right of action, the complaint fails to state a plausible claim against PayPal, and that the complaint contains only conclusory allegations that PayPal caused him harm. (ECF No. 25 at 4-11).

Truist Bank filed a motion to dismiss the complaint and a memorandum in support thereof on July 28, 2020. (ECF No. 21). Truist Bank is not a party to this action, and Mr. Shehan asserts no claim against Truist Bank. (*See* ECF No. 1); *see also* II.A., *supra*. Nonetheless, Truist Bank seeks dismissal, "out of an abundance of caution" and in an attempt to be "formally dismissed as a perceived party to this action[,]" for insufficient process under Rule 12(b)(4) and for failure to state a claim under Rule 12(b)(6). (ECF No. 21 at 1-2).

### C. Plaintiff's Response

On October 1, 2020, Mr. Shehan filed a Motion for Extension of Time to file responses to the Defendants' Rule 12 motions. (ECF No. 35). On October 5, PNC filed a motion in opposition to Mr. Shehan's request for an extension of time. (ECF No. 36). The Court issued its Order on Motion for Extension of Time, granting Mr. Shehan an extension until October 27, 2020. (ECF No. 37). Mr. Shehan ultimately filed no response.

### III. STANDARD OF REVIEW

A party may assert defenses to a claim for relief in any pleading by responsive pleading or by motion. FED. R. CIV. P. 12(b). If defendants move for dismissal for both lack of subject-matter jurisdiction and failure to state a claim, the district court is "bound to consider the 12(b)(1) motion first, since the Rule 12(b)(6) challenge becomes moot if [the] court lacks subject-matter jurisdiction." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990) (citing *Bell v. Hood*, 327 U.S. 678, 682 (1946)). Even where the merits question is more readily resolved and the prevailing party on the merits would be the same as the prevailing party were jurisdiction denied, it is improper to decide the merits of a case before finding jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-94 (1998).

Documents filed by pro se litigants must be "'liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal citations omitted)). Courts need not, however, "abrogate basic pleading essentials in *pro se* suits." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) (citations omitted).

A party may move for dismissal of an action based on lack of subject-matter jurisdiction under Rule 12(b)(1). Where a district court's subject-matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff bears the burden of proving jurisdiction to survive the motion. *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986). Normally, dismissal under Rule 12(b)(1) is not on the merits. *Id.* at 917.

## IV. LAW & ANALYSIS

Before this Court are motions to dismiss filed by PNC and Stock Yards pursuant to Rules 12(b)(1) and (6), as well as PayPal's motion to dismissed for failure to state a claim.[6] The Court must address the Rule 12(b)(1) motions first. *See Moir*, 895 F.2d at 269 (citing *Bell*, 327 U.S. at 682).

It is well settled that "[f]ederal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute[.]" *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) (citations omitted). The two primary bases of federal subject-matter jurisdiction are federal question jurisdiction and diversity of citizenship jurisdiction. *See* 28 U.S.C. §§ 1331, 1332. In some cases, district courts may have jurisdiction where the United States Government is named as a defendant. *See* 28 U.S.C. § 1346.

Under the federal question jurisdiction statute, federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A claim arises under federal law where the cause of action is created by a federal statute or state law claims implicate a substantial question of federal law. *Estate of Cornell v. Bayview Loan Servicing, LLC*, 908 F.3d 1008, 1012 (6th Cir. 2018) (citations omitted). Jurisdiction over federal issues embedded in state law claims between non-diverse

---

[6] The Court notes non-party Truist Bank's motion under Rule 12(b)(4) and (6).

parties exists only if: (1) the case necessarily raises a federal issue; (2) the federal issue is substantial and in actual dispute; and (3) the exercise of federal jurisdiction will not disturb "any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).

Federal district courts generally have original jurisdiction of all civil actions where the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states. *See* 28 U.S.C. § 1332(a)(1). Diversity of citizenship jurisdiction requires complete diversity, which exists only where each plaintiff is diverse from each defendant. *See, e.g.*, *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

Here, the complaint apparently attempts to establish subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1346. The complaint states: "The United States Federal Courts are the proper jurisdiction for this matter based on the subject matter surrounding the federal Paycheck Protection Program." (ECF No. 1 at 5). This language, construed liberally, suggests an attempt to invoke federal question jurisdiction. The complaint also names the DOJ, as well as "Federal Officials 1-5," as defendants. (ECF No. 1). Although it is unclear whether Federal Officials 1-5 are named in their official capacity, naming the DOJ as a defendant suggests § 1346 as a potential jurisdictional basis in this case. Such conclusions find further support in the Civil Cover Sheet filed with the complaint, which indicates that §§ 1331 and 1346 are relied upon. (ECF No. 1-1). The complaint suggests no attempt to invoke diversity of citizenship jurisdiction.

On the issue of subject-matter jurisdiction, PNC advances two independent arguments. First, it argues the complaint's allegations are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion under the precedent of *Apple v. Glenn*, and are therefore insufficient to invoke subject-matter jurisdiction. Second, PNC argues that this

Court lacks jurisdiction because the CARES Act does not create a private right of action, and because the complaint asserts only state law claims that do not implicate a substantial federal issue while complete diversity is lacking.  Stock Yards makes a substantially similar argument on this front. (ECF No. 32 at 6-8).

### A. Arguments for dismissal under *Apple v. Glenn*

At issue is whether the complaint should be dismissed applying the precedent of *Apple v. Glenn*.

The Sixth Circuit has recognized that *sua sponte* dismissal under Rule 12(b)(1) is proper "when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) (citing *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974)). In *Apple*, the plaintiff claimed that public officials violated his First Amendment right to petition by neither answering nor taking the action requested in his letters to them. *Id.* at 478-79. The Sixth Circuit concluded that the plaintiff's claims lacked "the legal plausibility necessary to invoke federal subject matter jurisdiction" because a citizen's right to petition the government does not guarantee a response to or the right to compel government officials to act on or adopt a citizen's views. *Id.* at 479-80.

The central proposition of *Apple* stems from the requirement, observed in *Hagans v. Lavine*, that federal question jurisdiction be supported by a "substantial" question under federal law. *See Apple*, 183 F.3d at 479 (citing *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974)).  In *Hagans*, the Supreme Court observed that it had "repeatedly held that the federal courts are without power to entertain claims otherwise within their jurisdiction if they are 'so attenuated and unsubstantial as to be absolutely devoid of merit,' 'wholly insubstantial,' 'obviously

frivolous,' 'plainly unsubstantial,' or 'no longer open to discussion[.]'" *Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974).

Courts have said, in the context of dismissals under *Apple* where the *in forma pauperis* statute, 28 U.S.C. § 1915, was inapplicable, that "frivolous" means lacking an arguable basis in either law or fact. For example, in an unpublished opinion, the Sixth Circuit, citing *Dellis v. Corrs. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001), stated: "A case is frivolous if it lacks an arguable basis either in law or in fact." *Clay v. Metro. Gov't*, 46 F. App'x 348, 348 (6th Cir. 2002). In *Clay*, however, the Sixth Circuit concluded that dismissal was appropriate because the complaint lacked an arguable basis in law. *Id.* at 348-49. Its holding did not depend on a finding that the complaint lacked an arguable basis in fact. *See id.*

The foregoing understanding of "frivolous" is drawn from dismissals in the context of 28 U.S.C. § 1915, as the *Clay* court's citation to *Dellis* shows. In *Dellis*, the Sixth Circuit applied the "no arguable basis in law or fact" formulation to a dismissal made under 28 U.S.C. § 1915(e)(2)(B)(i). 257 F.3d at 510-11. The *Dellis* court's formulation was in turn drawn from another 28 U.S.C. § 1915 case, *Neitzke v. Williams*, 490 U.S. 319 (1989). In *Neitzke*, the Supreme Court recognized that 28 U.S.C. § 1915's "term 'frivolous' when applied to a complaint, embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." 490 U.S. at 325. It explained that dismissal of frivolous complaints in the 28 U.S.C. § 1915 context:

> is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, *but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual*

- 11 -

> *contentions are clearly baseless*. Examples of the former class are claims against
> which it is clear that the defendants are immune from suit . . . Examples of the
> latter class are claims describing fantastic or delusional scenarios, claims with
> which federal district judges are all too familiar.

*Neitzke*, 490 U.S. at 327-28 (italics added). Thus, a screening process under that statute exists for

reasons that do not apply with the same force in the context of a fee-paid complaint.

In view of the above, there may be some question as to what extent *Apple*'s use of the

phrase "totally . . . frivolous" should be read to permit dismissal where the allegations of a fee-

paid complaint lack an arguable basis only in fact. On the one hand, *Clay* stated that a complaint

lacking an arguable basis in law *or* fact is frivolous, and it expressed no misgivings about

applying that formulation in its entirety outside of the 28 U.S.C. § 1915 context. On the other

hand, the *Clay* court upheld dismissal because the complaint lacked an arguable basis in law,

without discussing whether it lacked one in fact. Similarly, in *Apple*, dismissal was upheld

because the plaintiff's claims inarguably lacked legal plausibility. To make matters more

difficult, claims lacking an arguable basis in fact may often lack one in law too. *See, e.g.*, *Tucker

v. FBI Head Quarters*, No. 19-13626, 2020 WL 2059866, at *2-3 (E.D. Mich. Apr. 29, 2020)

(dismissing as frivolous a complaint alleging "Surveillance Operatives" for the "Deep State" or

"Shadow Government" were working to hypnotize plaintiff and his wife through "electronic

warfare" and other means where Court was "not even able to identify from the pleadings any

possibility of a lawful claim for relief").

Such ambiguities, as well as *Apple*'s admonition that "[w]hen a district court is faced

with a complaint that appears to be frivolous or unsubstantial in nature, dismissal under Rule

12(b)(1) . . . is appropriate in only the rarest of circumstances[,]" 183 F.3d at 480, suggest that

caution is necessary before dismissing a complaint that lacks an arguable basis only in fact. At

the very least, it would seem, the factual allegations must be totally or wholly frivolous. *See Hagans*, 415 U.S. 528, 539 (noting that in the context of convening a three-judge court "[t]he limiting words 'wholly' and 'obviously' have cogent legal significance").

Notwithstanding the questions surrounding its applicability outside of the 28 U.S.C. § 1915 context, the definition of frivolous is relatively clear: "A complaint lacks an arguable or rational basis in law if it is based on legal theories that are indisputably meritless[,]" while a "complaint lacks an arguable or rational basis in fact if it describes fantastic or delusional scenarios." *Abner v. SBC (Ameritech)*, 86 F. App'x 958, 958 (6th Cir. 2004) (internal quotation marks omitted) (unpublished). A claim is "factually frivolous only if the facts alleged are 'clearly baseless,' . . . a category encompassing allegations that are 'fanciful,' . . . 'fantastic,' . . . and 'delusional[.]'" *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992). Indeed, "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible[.]" *Id.* at 33.

Here, Mr. Shehan filed a fee-paid complaint and has neither sought nor been granted leave to proceed *in forma pauperis*. Therefore, 28 U.S.C. § 1915(e)(2) does not apply.

The vast majority of the complaint describes a fantastic or delusional scenario. Mr. Shehan's case revolves around his belief that he was the victim of a fraudulent tax case brought against him by the DOJ as part of a sprawling conspiracy driven by Truist Financial. Mr. Shehan alleges that the tax case was neither "implemented [n]or intended to collect taxes. [It] was conceived, designed and fabricated by Truist Financial as a weapon to control Shehan's testimony, to conceal bank fraud, to engage in federal racketeering and obstruction of justice." (ECF No. 1 at 6). In Mr. Shehan's view, the "civil rights violations and crimes committed by the United States Department of Justice, other Federal Officials and Truist Financial Corporation

- 13 -

against Shehan" are the only reason his PPP applications were declined. (ECF No. 1 at 20, ¶ 35). To Mr. Shehan's lights, PayPal, PNC, and Stock Yard should have discovered that the information on which they based their alleged denial—information about the tax case which was allegedly both in the public record and disclosed by Mr. Shehan himself (ECF No. 1 at 10-11, ¶¶ 7-9)—was the product of coordinated efforts involving myriad public and private individuals and entities acting on behalf of or to further the interests of Truist Financial. (ECF No. 1 at 12-23, ¶¶ 12-48). Among the ranks of actors allegedly furthering Truist Financial's interests at Mr. Shehan's expense are an I.R.S. Special Agent, two federal judges and one's spouse, a Kentucky state judge, one or more law firms, one or more DOJ officials, a Kentucky newspaper, unnamed federal officials, and officers, agents, and shareholders of Truist Financial. (ECF No. 1 at 12-24, ¶¶ 12-48). Such allegations describe a fantastic or delusional scenario and therefore lack an arguable basis in fact.

Nonetheless, some of the complaint's factual allegations are not so clearly baseless. At its core, the complaint alleges that: (1) Mr. Shehan contacted PayPal, PNC, and Stock Yards to submit PPP applications; (2) each of those three Defendants declined his application; and (3) each Defendant based its decision on information about a tax case previously brought against Mr. Shehan by the DOJ. Such factual allegations do not strike the court as irrational, wholly incredible, or describing a fantastic or delusional scenario. Moreover, Mr. Shehan claims that declining his application on the basis of information about that tax case was improper and gave rise to damages. The possibility that such factual allegations may give rise to a claim for violation of federal law—here, the CARES Act—does not depend on an indisputably meritless legal theory. For example, whether it would violate the CARES Act to decline a PPP application because of a legitimate tax prosecution in the applicant's past is not obvious from prior

decisions. The CARES Act is of recent vintage, and decisions addressing whether private parties may bring a claim for violation of the Act are not abundant.

In sum, the Court declines to dismiss this case under *Apple* even assuming that *Apple* provides for dismissal under Rule 12(b)(1) where a complaint's allegations lack an arguable basis only in fact. Although much of the complaint describes fantastic or delusional scenarios, its core allegations do not. The Court therefore cannot say that the complaint's factual allegations are totally or wholly frivolous. Additionally, the claim that those core allegations amounted to a violation of the PPP is not based, at this point in time, on an indisputably meritless legal theory. Being mindful of the Sixth Circuit's admonition that dismissal on Rule 12(b)(1) grounds under *Apple* is appropriate in only the rarest of circumstances, the Court concludes that dismissal is not proper pursuant to Rule 12(b)(1) under *Apple*. That conclusion does not mean, however, that subject-matter jurisdiction exists.

### B. Only State Law Claims Asserted and Complete Diversity Lacking

PNC and Stock Yards each make the independent argument that subject-matter jurisdiction is lacking because Mr. Shehan brought only state law claims and complete diversity is lacking.

The Court construes Mr. Shehan's pro se complaint liberally and interprets it as asserting a claim based on a violation of section 1102 of the CARES Act in addition to state law claims. The complaint states: "The United States Federal Courts are the proper jurisdiction for this matter based on the subject matter surrounding the federal Paycheck Protection Program." (ECF No. 1at 5). This language suggests an attempt to state the grounds for this Court's jurisdiction under 28 U.S.C. § 1331. *See* Fed. R. Civ. P. 8(a)(1). Moreover, the complaint alleges that "because of the bank's gross negligence, *breach of the PPP*, and bad faith, Shehan suffered

damages[,]" (ECF No. 1 at 11, ¶ 10 (italics added)), and that declining his application was "a *violation and breach of the Paycheck Protection Program's purpose . . . .*" (ECF No. 1 at 24, ¶ 50-53 (italics added)). The language quoted above leads this Court to conclude that Mr. Shehan has attempted both to bring a claim for violation of section 1102 of the CARES Act and to invoke federal question jurisdiction.

The Court finds, however, that the complaint fails to establish diversity of citizenship jurisdiction. Mr. Shehan bears the burden of proving jurisdiction. *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986). Here, Mr. Shehan has made no attempt to invoke such jurisdiction. He alleges that he is a life-long resident of Kentucky, and his complaint names several defendants with Kentucky addresses. (ECF No. 1). He makes no allegations that such defendants are not in fact residents of Kentucky despite their addresses. The Civil Cover Sheet filed with his complaint did not indicate 28 US.C. § 1332 as a jurisdictional basis. (ECF No. 1-1 at 1). Thus, even assuming *arguendo* the amount in controversy is met by Mr. Shehan's claim for fifty million dollars in damages, Mr. Shehan has not established diversity of citizenship jurisdiction.

The Court notes that subject-matter jurisdiction cannot be based on 28 U.S.C. § 1346. Although the DOJ is named as a defendant in the complaint, Mr. Shehan expressly rejects the possibility of asserting a claim against it. (*See* sources cited *supra* notes 4-5). Moreover, he asserts no claims against "Federal Officials 1-5." The complaint makes claims against only three private parties—PayPal, PNC, and Stock Yards. (ECF No. 1); *see also* II.A., *supra*. The Court is at a loss as to how 28 U.S.C. § 1346 could support Mr. Shehan's claims.

In sum, only federal question jurisdiction may serve as a potential jurisdictional basis for Mr. Shehan's claim of a PPP violation. As for Mr. Shehan's state law claims, there are two

potential jurisdictional bases. First, if the Court finds that Mr. Shehan's claim that Defendants violated the PPP arises under federal law, it may potentially exercise supplemental jurisdiction over the state law claims. *See* 28 U.S.C. § 1367. Second, the state law claims potentially may be supported by federal question jurisdiction. *See Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). As discussed below, however, the Court finds that it lacks subject-matter jurisdiction of Mr. Shehan's claim for violation of the PPP, and the remaining state law claims do not implicate a substantial issue of federal law under *Grable*.

### C. No Private Right of Action

To the extent Mr. Shehan claims that Defendants violated section 1102 of the CARES Act and thereby caused him injury, the Court lacks subject-matter jurisdiction. The question is whether section 1102 contains an express or implied private right of action such that Mr. Shehan's complaint states a cause of action "arising under" that statute. The issue is one of first impression in the Sixth Circuit.

Under 28 U.S.C. § 1331, federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." In general, "[t]he 'arising under' gateway into federal court in fact has two distinct paths: 1) 'litigants whose causes of action are created by federal law,' and 2) 'state-law claims that implicate significant federal issues.'" *Estate of Cornell v. Bayview Loan Servicing, LLC*, 908 F.3d 1008, 1012 (6th Cir. 2018) (quoting *Hampton v. R.J. Corman R.R. Switching Co.*, 683 F.3d 708, 711 (6th Cir. 2012)). The former path "admits litigants whose causes of action are created by federal law, that is, where federal law provides a right to relief." *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 550 (6th Cir. 2006) (citations omitted). Indeed, "the vast majority of cases brought under the

general federal-question jurisdiction of the federal courts are those in which federal law creates the cause of action." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986).

The fact, however, "'that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person.'" *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979) (quoting *Cannon v. Univ. of Chi.*, 441 U.S. 677, 688 (1979)). Whether a statutory cause of action exists is a question of statutory construction. *Id.* (citations omitted). A private cause of action may be express or implied. *Estate of Cornell*, 908 F.3d at 1013. In determining "whether a private cause of action exists, we must begin with the text of the statute." *Id.* at 1012.

Congress passed, and President Trump signed on March 27, 2020, the CARES Act to provide immediate assistance to individuals, families, and businesses affected by the coronavirus pandemic. CARES Act, Pub. L. No. 116-36, 134 Stat. 281 (2020). Among other things, the CARES Act temporarily added the PPP to the U.S. Small Business Administration's 7(a) Loan Program. *See id.* § 1102; 15 U.S.C. § 636(a)(36). The PPP is meant to provide economic relief to small businesses nationwide adversely affected by the pandemic. Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20,811, 20,811-12 (Apr. 2, 2020) (to be codified at 13 C.F.R. 120). The Act authorized the Small Business Administration ("SBA") temporarily to guarantee loans under the PPP. *Id.*; CARES Act § 1102. The Act gave approved lenders delegated authority to make PPP loans, and it provided that additional qualified lenders may have the authority to make such loans. CARES Act § 1102(a)(2)(F)(ii), (iii). It also required that, in evaluating the eligibility of a borrower for a PPP loan, "a lender shall consider whether the borrower" (1) was in operation on February 15 and (2) either had employees for

whom it paid salaries and payroll taxes or paid independent contractors. CARES Act § 1102(a)(2)(F)(ii)(II).

Mr. Shehan alleges that he suffered monetary damages because PayPal, PNC, and Stock Yards improperly declined his application for a PPP loan on the basis of information related to a tax case the DOJ previously brought against him. His complaint, construed liberally, alleges that the Defendants violated section 1102 of the CARES Act.

Stock Yards argues that "Plaintiff alleges his claims are based upon the PPP which is under the federal CARES Act, . . . but that is insufficient to confer federal jurisdiction because the CARES Act does not include a private right of action." (ECF No. 32 at 7). In support of this argument, Stock Yards included citations to *Profiles, Inc. v. Bank of America Corp.*, 453 F. Supp. 3d 742 (D. Md. 2020) [hereinafter *Profiles*], and *Eastman v. Marine Mech. Corp.*, 438 F.3d 544 (6th Cir. 2006), but did not include a detailed discussion. (ECF No. 32 at 7-9). Stock Yards additionally couched this same argument in Rule 12(b)(6) terms. (*Id.* at 10). Similarly, PNC cited *Profiles* in arguing that the CARES Act does not create a private right of action, couching its argument in both Rule 12(b)(1) and Rule 12(b)(6) terms, without detailed discussion. (ECF No. 20). PayPal also argues that the CARES Act does not provide an express or implied right of action. (ECF No. 25). It likewise cited the *Profiles* decision. (*Id.* at 5). PayPal's discussion of the issue included arguments that "the Small Business Act, which was amended and supplemented by the CARES Act, does not contain an express or implied private right of action[,]" and that "the CARES Act and Small Business Act provide for enforcement by regulators, not private parties." (*Id.* at 5-6).

The CARES Act does not create an express private right of action for an alleged violation of section 1102. The Sixth Circuit has observed that "'[a]n express federal cause of action states,

in so many words, that the law permits a claimant to bring a claim in federal court.'" *Ohlendorf v. United Food & Commercial Workers Int'l Union, Local 876*, 883 F.3d 636, 640 (6th Cir. 2018) (quoting *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010)). Nothing in the text of § 1102 in particular or the CARES Act in general states that a potential borrower whose PPP application was declined may bring a claim in federal court. Thus, the Act creates no express private right of action.

The question, then, becomes whether the CARES Act creates an implied private right of action. Before implying a private remedy, "we must discern congressional intent[,]" but absent congressional intent we may not do so, "no matter how desirable it may be." *Estate of Cornell v. Bayview Loan Servicing, LLC*, 908 F.3d 1008, 1013 (2018) (citations omitted). If "Congress wishes to create new rights—even implied rights of action—'it must do so in clear and unambiguous terms.'" *Estate of Cornell v. Bayview Loan Servicing, LLC*, 908 F.3d 1008, 1013 (2018) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 290 (2002)). To find an implied private right of action, we must "infer that Congress created a private right and provided for a private remedy[.]" *Ohlendorf*, 883 F.3d at 640 (citations omitted). To imply a right of action, Congress's "rights-creating language must be 'clear and unambiguous.'" *Ohlendorf*, 883 F.3d at 641 (quoting *McCready v. White*, 417 F.3d 700, 703 (7th Cir. 2005)). A "statute must specify the right and identify the beneficiary." *Estate of Cornell*, 908 F.3d 1013 (citations omitted). For a statute to create a private right of action, "its text must be 'phrased in terms of the persons benefited.'" *Gonzaga,* 536 U.S. at 2275 (quoting *Cannon v. Univ. of Chi.*, 441 U.S. 677, 688 n.13 (1979)).

The Defendants have not argued this issue in great detail, and Mr. Shehan offered no argument on it. In support of their respective arguments that the CARES Act does not include a

private right of action, PayPal, PNC, and Stock Yards each cited *Profiles*, the first case to address the issue.

In *Profiles*, the plaintiffs of a putative class action sued Bank of America for its refusal to accept their PPP applications. *Id.* at 744. Such refusal was based initially on a Bank of America policy against accepting applications where the applicant lacked a borrowing relationship with the bank. *Id.* at 745-46. That policy was later changed so that those who had only a depository relationship with the bank could apply, but only if they did not have a credit or borrowing relationship with another bank. *Id.* Among other things, the plaintiffs argued there were two primary indicators of Congress's intent to create a private right of action Act:

> (1) Congress's use of the phrase 'any business concern' in § 1102(a)(1), and (2) Congress's directive that regulations issued by the Secretary of the Treasury 'shall' contain 'terms and conditions that, to the maximum extent practicable, are consistent with' the borrower eligibility criteria, § 1109(d)(2)(B)(i).

*Id.* at 751.

The *Profiles* court disagreed. It noted that the term "any qualified small business concern" was already codified in the SBA prior to the CARES Act, and that courts had concluded the SBA did not contain an implied private right of action. *Id.* It further noted, in support of the view that Congress did not intend to create a separate private right of action in the CARES Act, the civil and criminal regime codified in the SBA. *Id.* ("Pursuant to 15 U.S.C. § 650(c), for example, the Administrator has authority to institute a civil action against lending companies for violations of the SBA."). Ultimately, the court was "not persuaded that the language of the CARES Act evidences the requisite congressional intent to create a private right of action." *Id.* It stated that even assuming PPP applicants had a right under the CARES Act to apply through a lender of their choice, "nothing in its text evidences Congress's intent to enable

- 21 -

PPP loan applicants to bring civil suits against PPP lenders, to enforce that right. The plain language of the statute does not suggest an intent to confer the particular right alleged, nor a private remedy against participating SBA lenders." *Id.* at 751-52.

Other courts have since addressed the question of whether the CARES Act creates an implied private right of action for agents denied an agent fee. *See, e.g.*, *Johnson v. JPMorgan Chase Bank, N.A.*, 2020 WL 5608683, at *8-9 (S.D.N.Y. Sep. 21, 2020) (finding no private right under CARES Act for agents of lenders seeking agent fees), *appeal filed sub nom. Quinn v. JPMorgan Chase Bank, N.A.*, 20-3588 (2d Cir. Oct. 13, 2020); *Juan Antonio Sanchez, PC v. Bank of South Texas*, 2020 WL 6060868, at *7 (S.D. Tex. Oct. 14, 2020) ("The Court joins the preexisting consensus that 'there is no private cause of action to enforce this [agent fee] provision of the CARES act.'"); *Leigh King Norton & Underwood, LLC v. Regions Fin. Corp.*, 2020 WL 6273739, at *9 (N.D. Ala. Oct. 26, 2020) ("Nothing in the Small Business Act or the CARES Act implies the existence of a remedy for agents denied an agent fee."). However, this Court is aware of no decision finding that the CARES Act creates any implied private right of action.

Here, the Court concludes that the CARES Act creates no implied private right of action for a potential borrower alleging a violation of section 1102. The text of the CARES Act indicates no intent on the part of Congress to create such a private right of action. Section 1102 added the PPP to the SBA's preexisting 7(a) Loan Program and authorized the SBA Administrator temporarily to guarantee PPP loans to eligible borrowers. In doing so, it included no clear and unambiguous rights-creating language. Nothing in the statute indicates that a would-be borrower, even an eligible one, has a right to receive a PPP loan, let alone to receive one from a particular lender. Nor does the statute indicate that a borrower may sue a lender who declines

the borrower's application. No private remedy against lenders appears. Absent congressional intent to create a private remedy, this Court may not imply one.

Thus, since Mr. Shehan lacks a private right of action to sue the Defendants for the violation of the PPP he alleges, this Court lacks federal question jurisdiction of such a claim. *See, e.g.*, *Miller v. Bruenger*, 949 F.3d 986 (6th Cir. 2020) (affirming dismissal for lack of subject-matter jurisdiction upon removal where federal law did not create an express or implied cause of action and state law claims did not implicate a substantial issue of federal law); *Estate of Cornell v. Bayview Loan Servicing LLC*, 908 F.3d 1008 (6th Cir. 2018) ("In sum, because the federal statute does not create a cause of action, and the federal issue nested inside Plaintiffs' state law cause of action is not substantial, the district court lacked subject matter jurisdiction."); *Hampton v. R.J. Corman R.R. Switching Co.*, 683 F.3d 708 (6th Cir. 2012) ("Having found neither a federal cause of action nor a substantial federal issue, we conclude that Hampton's amended complaint 'does not state a claim arising under the Constitution, laws, or treaties of the United States." (internal quotations marks omitted)).

The question remains, however, whether Mr. Shehan's state law claims implicate significant federal issues such that they arise under federal law for purposes of 28 U.S.C. §1331.[7]

### D. State Law Claims

None of Mr. Shehan's remaining state law claims arises under federal law for purposes of 28 U.S.C. § 1331.

---

[7] PayPal, PNC, and Stock Yards each argue that dismissal is proper because Mr. Shehan may not circumvent the CARES Act's lack of a private right of action by recharacterizing his claims as arising under state law. The Court expresses no opinion on that argument because, here, it is difficult to discern whether or not Mr. Shehan's state law claims are in substance based on an alleged violation of the CARES Act. The Court instead resolves the jurisdictional question in this case according to the analytical framework set forth in *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005).

Jurisdiction over federal issues embedded in state law claims between non-diverse parties exists only if: (1) the case necessarily raises a federal issue; (2) the federal issue is substantial and in actual dispute; and (3) the exercise of federal jurisdiction will not disturb "any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). This pathway into federal courts "is a 'slim category[]' . . . that is to be read narrowly." *Estate of Cornell v. Bayview Loan Servicing, LLC*, 908 F.3d 1008, 1014 (2018) (citations omitted).

As a preliminary matter, the Court notes that the complaint makes no suggestion as to which state's laws should apply to his claims. Nonetheless, the Court can discern from the complaint no reason why any of his state law claims would necessarily require application of the CARES Act or any other federal law. Although much of the complaint focuses on the PPP, it presents no reason to believe that Mr. Shehan's state law claims will turn on anything other than questions of state law.

Even if Mr. Shehan's state law claims necessarily raised a federal issue, it would not be substantial in this case. In determining whether a federal issue is substantial, we consider the following:

> (1) whether the case includes a federal agency, and particularly, whether that agency's compliance with the federal statute is in dispute; (2) whether the federal question is important (i.e., not trivial); (3) whether a decision on the federal question will resolve the case (i.e., the federal question is not merely incidental to the outcome); and (4) whether a decision as to the federal question will control numerous other cases (i.e., the issue is not anomalous or isolated).

*Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 570 (6th Cir. 2007) (citation omitted). No single factor is dispositive. In determining whether a federal question of law is substantial, the

above factors must be considered collectively, along with others that may be applicable, "in aggregate." *Id.* at 570.

Here, the first factor weighs against a finding of substantiality. This case includes neither a federal agency nor its compliance with the CARES Act; Mr. Shehan's state law claims are focused on three private parties. There is no reason to believe resolution of Mr. Shehan's state law contract and tort claims would affect the Government's ability to apply the CARES Act uniformly or otherwise carry out its purposes. *See id.* at 570.

The second factor is "subjective and requires that we decide whether the question to be resolved is important." *Id.* at 570 (citing *Empire Healthcare Assurance, Inc. v. McVeigh*, 547 U.S. 677 (2006)). Assuming *arguendo* Mr. Shehan's state law claims would raise a federal issue under the CARES Act, that issue is likely an important one. Resolution of whether Defendants somehow violated the CARES Act would require analysis and interpretation of that Act.

The third factor is objective, *id.* at 571, and also weighs against a finding of substantiality in this case. Again, there is no reason to believe that a decision on the question of whether PayPal, PNC, or Stock Yards is liable to Mr. Shehan in contract or in tort would be resolved by federal law. The complaint gives no suggestion that a federal question would be more than incidental to the outcome on such claims.

The fourth factor is also subjective. *Id.* at 571. Here, it too weighs against a finding of substantiality. It does not appear that a decision on Mr. Shehan's contract or tort claims will be anything other than particular and narrow.

Taken in aggregate, even assuming *arguendo* there is a federal issue necessarily raised and in actual dispute, the above factors lead the Court to conclude that there is no substantial federal issue implicated here.

The final consideration in this analysis—the congressionally approved balance of federal and state judicial responsibilities—weighs against the propriety of jurisdiction as well. The Court must "inquire into the risk of upsetting the intended balance by opening the federal courts to an undesirable quantity of litigation." *Mikulski*, 501 F.3d at 573 (citing *Grable*, 545 U.S. at 315). This inquiry "requir[es] us to speculate about the consequences of the federal caseload that will flow from this decision," but it must be a reasoned speculation. *Id.*

The Court notes that the first two considerations under *Grable* make clear federal question jurisdiction of Mr. Shehan's state law claims is lacking. While the Court addresses the third consideration of the congressionally approved balance of federal and state responsibilities, its discussion on this point is in no way central to the Court's holding. Here, though, reasoned speculation counsels against a finding of jurisdiction. At least with respect to cases similar to Mr. Shehan's, the Court cannot help but perceive a significant risk of opening the federal courts to an undesirable quantity of litigation in which purportedly eligible PPP borrowers sue lenders on state law claims that indirectly implicate the CARES Act's PPP-related provisions. The CARES Act added loan programs to the SBA that are expansive in size and scope. The pandemic has caused businesses across the country to suffer. Many such businesses are likely to reap the benefits of the PPP, but others will not. Those in the latter category may bring claims resembling Mr. Shehan's, or they may advance more tenable claims. In either event, it can reasonably be expected that a non-trivial number of affected businesses may bring claims that in some way relate to the PPP or other provisions of the CARES Act, whether they are rooted in contract, tort, or other state law. Such considerations, viewed in conjunction with this Court's conclusion that section 1102 does not create a private right of action, suggest that the exercise of jurisdiction in this case may disrupt the congressionally approved balance of federal and state judicial

responsibilities. *See Grable*, 545 U.S. at 319 ("Expressing concern over the 'increased volume of federal litigation,' and noting the importance of adhering to 'legislative intent,' *Merrell Dow* thought it improbable that the Congress, having made no provision for a federal cause of action, would have meant to welcome any state-law tort case implicating federal law 'solely because the violation of the federal statute is said to [create] a rebuttable presumption [of negligence] . . . under state law.").

Thus, none of Mr. Shehan's claims arises under federal law for purposes of 28 U.S.C. § 1331. Therefore, this court lacks subject-matter jurisdiction over all claims asserted in the complaint.

## V. CONCLUSION

For the foregoing reasons, the motions filed by Defendant PNC and Defendant Stock Yards for dismissal pursuant to Rule 12(b)(1) are **GRANTED.** Plaintiff's complaint is **DISMISSED WITHOUT PREJUDICE**. All other motions are **DENIED AS MOOT**.


**IT IS SO ORDERED.**



**DATED:  December 29, 2020**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**